# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THAIS ORTOLAZA *ex rel* E., a minor child,<br><br>    Plaintiff,<br> v.<br><br>CAPITOL REGION EDUCATION COUNCIL; ROBERT McCAIN; TIMOTHY SULLIVAN; CHRISTOPHER NOLAN; BRIAN GUSTIS; EZEKIAL M. DONNELLY; MARC DaCRUZ; CARLOS TORRES; JOSEPH BUYAK; IAN POWELL; BENJAMIN LEE; NICHOLAS TRIGILA; and THE CITY OF HARTFORD,<br><br>    Defendants. | 3:17-cv-01885 (CSH)<br><br><br>**MAY 7, 2018** |

## RULING ON DEFENDANTS' MOTION TO DISMISS

### HAIGHT, Senior District Judge:

Plaintiff Thais Ortolaza ("Plaintiff") has brought this action on behalf of her minor child, E., alleging civil rights violations, and seeks recovery pursuant to 42 U.S.C. § 1983. Plaintiff also alleges that defendants committed several state law torts.

At the pertinent times, E. was a 14-year-old student at the Two Rivers Magnet High School ("Two Rivers") in Hartford, Connecticut. This action arises out of an incident that occurred during the morning of November 19, 2015. E. was removed by Hartford police from a school bus carrying students to Two Rivers, arrested on a charge of sending a threatening email to the Two Rivers principal, detained for about an hour, and then released into his parents' custody. No further action against E. has been taken.

As a result of this incident, Plaintiff, E.'s mother, suing on his behalf, asserts claims against two groups of Defendants. The first group consists of: Capitol Region Education Council ("CREC"), a regional education service center created by Connecticut statutes and the administrator of the Two Rivers school (among other schools); Robert McCain, the Principal of Two Rivers; Timothy Sullivan, Assistant Superintendent of Operations for CREC; and Christopher Nolan, the Director of Security for CREC. I will refer to these Defendants as the "CREC Defendants."

The second group of Defendants consists of officers, of varying ranks, in the Hartford Police Department ("HPD"), and the City of Hartford itself. I will refer to this group as the "Hartford Defendants."

The case is now before the Court on a motion on behalf of the CREC Defendants. The Hartford Defendants, represented by separate counsel, are not involved in the CREC motion.

Plaintiff's Complaint [Doc. 1] asserts federal constitutional claims against the CREC Defendants under 42 U.S.C. § 1983 for false arrest and excessive force. The Complaint also alleges claims under the common law for negligence and infliction of emotional distress against the individual CREC Defendants (McCain, Nolan and Sullivan). The CREC Defendants now move to dismiss certain counts against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. [Doc. 24]. Plaintiff resists the motion. This Ruling resolves it.

## I.    BACKGROUND[1]

In the late evening of November 18, 2015, an anonymous email with the subject line, "Reckoning" was delivered to Robert McCain, the Principal of Two Rivers, located in Hartford

---

[1] The facts recounted here are derived from the allegations in Plaintiff's Complaint and are assumed to be true for the purposes of this motion.

Connecticut. Complaint, Doc. 1 ¶¶6, 30. Two Rivers is a part of CREC, a regional education service center created pursuant to Conn. Gen. Stat. § 10-66c. *Id.* ¶¶5-6. The email in question was sent "via a spoofed email address from Italy," which had the effect of making the sender appear to be someone other than the actual source. *Id.* ¶30, n.1. The body of the email contained what appeared to be a threat of gun violence. *Id.* ¶31.[2] The email contained no identifying information, nor did it contain any specific information that related to Two Rivers, CREC, or the City of Hartford. *Id.* ¶32.

McCain read the email at approximately 6:00 a.m. on the morning of November 19, 2015. *Id.* ¶33. Immediately after reading the email, McCain called Timothy Sullivan, the Assistant Superintendent of Operations for CREC. *Id.* ¶¶7, 34. Upon discussing the content of the email, McCain and Sullivan "concluded that it was a legitimate threat." *Id.* ¶34. At 6:21 a.m., McCain called 911 to report the email, stating that he believed it to be a credible threat. *Id.* He identified himself as the principal of one school with two campuses, one for 9th and 10th grade students, and the other for 11th and 12th grade students. *Id.* He did not provide any information regarding whom he suspected sent the email. *Id.*

Meanwhile, Sullivan contacted Christopher Nolan, the Director of Security for CREC, and "involved [him] in the decision making process regarding this incident." *Id.* ¶¶8, 36. McCain, Sullivan, and Nolan were contacted by the Hartford Police Department ("HPD"), and were "in continuous communication with HPD from approximately 6:20 a.m. onward." *Id.* ¶37.

Defendants McCain, Sullivan and Nolan determined that out of the approximately 400

---

[2] In its entirety, the email read, "im fed up with the mind numbing shit this school puts me through its hell tomorrow im bringing my dads sawed off shotgun and pistol and ending this shit for good night better make sure you get this before morning" *Id.* (sic).

students that attended Two Rivers, E. was the only student who could have sent the email in question. *Id.* ¶38. E. was not very computer savvy. *Id.* ¶26. In fact, during a parent-teacher conference held at Two Rivers the evening of November 18, 2015, it was discussed with Plaintiff that E. was not complying with the requirement to electronically file his homework. *Id.* ¶25. E. felt more comfortable handing in his work in hard copy, instead. *Id.* ¶26. Issues of violence were not discussed during the parent-teacher conference, and E. had no history of violence or threatening conduct. *Id.* ¶27.

Nonetheless, Sullivan and McCain considered E. highly intelligent, and based solely on the usage of the word 'reckoning,' they used their intuition and determined that E. had sent the email in question. *Id.* ¶¶40-1. No further investigation was performed by McCain, Sullivan or Nolan. *Id.* ¶41. However, E. did not send the email. *Id.* ¶42. E. did not know what the word 'reckoning' meant, he did not know how to spoof an email address, and he liked his school, its staff, and the student body. *Id.* ¶¶43-5. He had no reputation of making threats, or having any sort of "obsession" with weapons or violence. *Id.* ¶46.

On November 19, 2015, at approximately 6:57 a.m., E. boarded the school bus to go to school. *Id.* ¶49. Upon arrival at Two Rivers, HPD diverted E.'s bus to another school, about a block away. *Id.* ¶62. Officers from HPD surrounded the bus, and one officer asked the bus driver if E. was onboard. *Id.* ¶64. When E. identified himself, two officers boarded the bus. *Id.* ¶66. At least one of the officers drew his gun, pointing it at E., causing E. to fear for his life. *Id.* ¶¶66-7. E. was removed from the bus and his bag was searched by the officers. *Id.* ¶69. Neither weapons nor contraband was recovered. *Id.* ¶70.

The officers then began interrogating E. outside the bus. *Id.* ¶75-6. He asked for his mother,

but neither HPD nor CREC complied with his request. *Id.* E. was threatened by an officer, handcuffed, and "perp walked" in front of a bus full of children to a police car. *Id.* ¶¶81-6. E. asked if he was going to be read his *Miranda* rights, but the officers present did not respond. E. then recited said rights out loud "to confirm for himself that he was under arrest." *Id.* ¶¶86, 88. He was pushed into a police cruiser, brought to Two Rivers, and "paraded" through the school in handcuffs "in front of the student body on his way to the main office." *Id.* ¶¶101-03. This "perp walk" humiliated E. and violated CREC policy. *Id.* ¶¶104-05.

The superintendent of CREC reached out to other CREC officials, instructing them to contact E.'s parents. *Id.* ¶98. No CREC or HPD officials contacted E.'s mother; instead, she was contacted by a witness and immediately drove to the school. *Id.* ¶¶90-6. E. was interrogated by police officers in the guidance counselor's office while handcuffed tightly to the back of his chair. *Id.* ¶¶106-07. McCain, who was aware that E.'s mother was not in the school, came into the room, and began to question E., in an effort to "subvert E.'s exercise of his right to remain silent." *Id.* ¶¶112, 142. E. felt defensive and did not want to be questioned without his mother present. *Id.* He informed the police that he was exercising his right to remain silent. *Id.*

The officers acted on behalf of the CREC Defendants in removing E. from the bus at gunpoint, in handcuffing him, in driving him to the school, and in handcuffing him to a chair for approximately 45 minutes. *Id.* ¶135. E. could have been released at the discretion of CREC administrators at any time. *Id.* ¶139. E. was not free to leave at any point when McCain was in the room. *Id.* ¶141.

Plaintiff and her husband arrived at the school approximately a half hour later. *Id.* ¶113. They spoke with McCain, Sullivan and Nolan, and with one of the police officers, and asked why Plaintiff

had not been contacted by HPD or CREC. *Id.* McCain responded that he was "not allowed to contact [her] per CREC policy." *Id.* ¶114. An officer and a CREC employee searched E.'s school-issued laptop for "clues" relating to the email, remarking that "there must be something on here." *Id.* ¶¶120-22. Nothing was found, and E. was not charged with a crime. *Id.* ¶¶118, 122. "Upon information and belief," CREC and the City of Hartford performed no further investigation related to the email. *Id.* ¶123. E. was released to his parents' custody. *Id.* ¶116. He had wrist pain and red marks on his wrists from being tightly handcuffed. *Id.* ¶117. E. never returned to Two Rivers school. *Id.* ¶124. He has suffered "extreme mental trauma and anguish" as a result of the events that transpired on November 19, 2015. *Id.* ¶129.

## II.   STANDARD OF REVIEW

"On a motion to dismiss, the issue is 'whether the claimant is entitled to offer evidence to support the claims.'" *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1984)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). This pleading standard creates a "two-pronged approach," *Iqbal*, 556 U.S. at 679, based on "[t]wo working principles". *Id*. at 678.

First, all factual allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in the favor of the non-moving party. *See id.; see also Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007) (citation omitted). The presumption of truth does not extend, however, to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, "a

6

complaint that states a plausible claim for relief" will survive a motion to dismiss and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (quotation marks omitted). "Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Associated Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

## III. DISCUSSION

The individual CREC Defendants McCain, Sullivan and Nolan move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Counts brought against each of them in their individual capacity pursuant to 42 U.S.C. § 1983, alleging violations of E.'s Fourth Amendment right to be free from false arrest. Defendants argue that there are no allegations that indicate that they were personally involved in E.'s arrest.

A section 1983 claim "has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). To prevail on a claim pursuant to § 1983, the plaintiff must allege the personal involvement of the individual defendant. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

The elements of a claim for false arrest pursuant to section 1983 are dictated by state law. *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). "Under Connecticut law, false imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Russo v.*

*City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (quotation marks and citation omitted). To establish a section 1983 false arrest claim based on the Fourth Amendment right to be free from unreasonable seizures, a plaintiff must show that: "(1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent for the arrest; and (4) the arrest was not supported by probable cause." *Marchand v. Simonson*, 16 F. Supp. 3d 97, 109 (D. Conn. 2014) (quotation marks and citation omitted).[3] In Connecticut, "favorable termination is an element of a section 1983 claim sounding in false imprisonment or false arrest." *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011)).

Defendants argue that the facts alleged in the Complaint do not demonstrate that McCain, Sullivan, and Nolan were personally involved in E.'s arrest. Defendants claim that there are no allegations that the CREC Defendants ordered the arrest of E., or otherwise caused it to happen. Plaintiff responds that "Defendant McCain used his position as a state actor to cause the arrest, handcuffing, and interrogation of E," and that McCain "searched for, found, and caused agents to arrest E., acting on his behalf." Doc. 36 at 6.[4]

The Complaint alleges that upon receiving the anonymous email in the early morning of November 19, 2015, Defendant McCain contacted Defendant Sullivan; they together determined that

_____

[3] Plaintiff's Complaint does not specify which constitutional or statutory rights were allegedly violated by Defendants. The Fourth Amendment provides the source of a claim of false arrest pursuant to section 1983. *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995) (footnote omitted) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)).

[4] These specific allegations do not appear in Plaintiff's Complaint. Indeed, Plaintiff's memorandum in opposition appears to contain several facts, allegations, and legal claims that are not contained in the Complaint. "A party may not use his or her opposition to a dispositive motion as a means to amend the complaint." *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007). Accordingly, the Court will not consider these assertions, which appeared for the first time in Plaintiff's memorandum.

the email contained a legitimate threat, and McCain then phoned 911, reporting the email and making no mention of a suspect. Defendants McCain, Sullivan and Nolan were thereafter contacted by the police, and remained in "continuous communication" with the Hartford Police Department from 6:20 a.m., onward. Police officers stopped and boarded E.'s school bus, ordered E. off the bus, handcuffed him, walked him to a police car, transported him to school, handcuffed him to a chair, and interrogated him.

Plaintiff alleges that the arrest was performed "by" the CREC Defendants in that "McCain called the police on E. without probable cause," and "as a result, Defendant City of Hartford Officers acted on behalf of Defendant McCain and Defendant CREC to remove him from the school bus at gunpoint and to further restrain E.'s liberty by handcuffing him. . . ." Doc. 1 ¶¶135-36. The City of Hartford and its police officers "operated under the control of Defendant CREC administrators," including the named CREC Defendants, and that E. could have been released at their discretion "at any time." *Id.* ¶139. Plaintiff's Complaint also alleges that all Defendants were "acting under color of [state] law at all times." *Id.* ¶19.

In one regard, the allegations of Plaintiff's complaint are puzzling. The pertinent paragraphs are 35-41 and 62-66. Paragraphs 35-38 allege that by 6:20 a.m. on November 19, 2015, McCain had read the threatening email and involved Sullivan and Nolan in discussing what to do about it. These three school administrators "determined that E. was the only student who could have sent it." Doc. 1 ¶38. Plaintiff's use of the verb "determined" is not intended to suggest that these Defendants conducted a careful factual inquiry into the matter; on the contrary, paragraph 41 alleges that the "three administrators performed no further investigation besides using their intuition that a spoofed email with the subject line 'Reckoning' could only have been sent by E." *Id.* The CREC Defendants'

first contact with the HPD came when "McCain called 911 at 6:21 a.m. and informed them of the email and that he believed it was credible . . . During the initial 911 call, he did not tell police who he suspected sent the email." *Id.* ¶35 (sic).  The school bus, engaged in picking up E. and other students for the beginning of the school day, arrived at Two Rivers and "was directed to . . . another school about a block away by HPD." *Id.* ¶62.  HPD police officers in cruisers surrounded the bus. *Id.* ¶63.  "The bus driver opened the door," and one officer "asked the bus driver if E. was on the bus. The driver repeated the question to all the students on the bus.  E. identified himself. " *Id.* ¶¶64-5. Two officers boarded the bus, one of them drew a gun on E., and the conduct of which Plaintiff complains began. *Id.* ¶66.

The reader of this account is required to speculate about why one of the first HPD officers on the scene "asked the bus driver if E. was on the bus." *Id.* ¶64.  What turned E., one of a number of students on the school bus, into a 'person of interest' to the HPD (in police parlance), in a case where "during the initial 911 call" School Principal McCain "did not tell police who he suspected sent the email"? *Id.* ¶35.  The only sensible answer is that at some time after that initial 911 call, a CREC Defendant told the HPD about their suspicions and asked the responding police officers to concentrate on E.  To be sure, the Complaint does not allege that occurred, and on a Rule 12(b)(6) motion to dismiss, a trial judge must not embellish or add to the facts alleged in the pleading. Nonetheless, in *Iqbal* the Supreme Court instructs district judges to use their "common sense" in determining whether a complaint "states a plausible claim for relief"; and my common sense, such as it is, suggests that at some time during the events of the morning in question, McCain, Sullivan, or Nolan must have communicated to the HPD their conclusion that E. sent the threatening email. There is no other rational way to account for the HPD officers' conduct when the school bus arrived

at school that morning to find police waiting for it.

Including for the sake of analysis the unpleaded additional communication just discussed, the strongest possible expression of the theory of Plaintiff's case against the CREC Defendants is that the three school administrators, negligently and without probable cause, concluded that E. sent the threatening email; that conclusion was erroneous; the administrators thereafter conveyed that false information to the HPD; and HPD officers, in response to the request or suggestion of the CREC and in reliance on the false information conveyed to them by the CREC school administrators, arrested and interrogated E.

In the instant case, on this motion to dismiss the Court does not reach the question of whether that chain of events, if proven as well as pleaded, would establish a tort claim against a CREC Defendant under the common law or Connecticut statutes. Instead, the Court considers the threshold question of whether that conduct, if proved, would establish for Plaintiff and against a CREC Defendant a viable constitutional claim for false arrest under 42 U.S.C. § 1983.

Plaintiff invokes 42 U.S.C. § 1983 as the source of this Court's subject matter jurisdiction over her federal claims against the CREC Defendants. Section 1983 creates federal liability on the part of a person who, "under color of" the law of a State, subjects another person to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The Second Circuit parsed § 1983 in *Dahlberg v. Becker*, 748 F.2d 85 (2d Cir. 1984):

> In order to allege a good cause of action, plaintiff must charge first that the conduct complained of has deprived him of a constitutionally-protected right; and second, that the conduct allegedly causing the deprivation was fairly attributable to the State. The Supreme Court has set forth a two-part analytical approach to this question of "fair attribution." Plaintiff must show that the allegedly wrongful action occurred as a result of the exercise of a

state-created right or privilege, or by a state-imposed rule of conduct. Plaintiff must also show that the party charged with the deprivation is a person who is a state official or someone whose conduct is otherwise chargeable to the State. In other words, to establish deprivation of a federally-protected right there must be both "state action" and a "state actor."

748 F.2d at 89. The Second Circuit expanded on those concepts in a footnote:

We recognize that the concept encompassed by "state action" and "state actor" overlap. They collapse into each other when the claim of a constitutional deprivation is directed against a public official. The two requirements diverge only when the claim is directed against a private party.

*Id*. at 89 n. 3.

The Second Circuit's analysis in *Dahlberg* dictates this Court's approach to the case at bar. The arrest, handcuffing, detention and interrogation of E. by Hartford police officers deprived E. of federally-protected rights. As for Plaintiff's § 1983 claims against the Hartford police officer Defendants who performed those acts, the concepts of *state action* and *state actor* "collapse into each other" where "the claim of a constitutional deprivation is directed against a public official." But the two requirements "diverge" when one comes to consider Plaintiff's claims against the CREC Defendants, who, in these circumstances, are "private parties," not "public officials."[5] The decisive

---

[5] While the CREC Defendants appear to be public employees, the Complaint contains no basis for concluding that their conduct was attributable to their status as state officials. It is well established that "[t]he traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quotation marks and citation omitted). Thus, "[m]ere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996) (citation omitted). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50 (collecting cases). An act that is not taken under color of state law is "merely private conduct, no matter how discriminatory or wrongful" it may be. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50

question is whether the CREC Defendants – who for these purposes are private parties – may in the circumstances of the case be characterized as "state actors" in the arrest of E. and consequently subject to possible § 1983 liability.

In *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268 (2d Cir. 1999), a police officer responded to a request for assistance from Healey, the owner of a car sales office, in dealing with an unruly customer. The customer subsequently filed a § 1983 action against the police officer and Healey. Chief Judge Winter's opinion reasoned:

> Healey's provision of background information to a police officer does not by itself make Healey a joint participant in state action under Section 1983. The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983.

189 F.3d at 272 (quotation marks and citation omitted). The Court of Appeals identified a policy reason militating in favor of that rule:

> Indeed, if Healey can be said to have acted jointly with [police officer] Fitzgerald on these facts, a private party would be considered a state actor responsible for subsequent, independent actions of a police officer whenever it legitimately calls for official assistance or protection.

_____

(1999) (quotation marks and citation omitted).

Here, Plaintiffs allegations are that the CREC Defendants "called the police on E. without probable cause" and "*as a result*, Defendant City of Hartford Officers acted on behalf of" the CREC Defendants in falsely arresting E. Doc. 1 ¶¶136-7, ¶¶145-6, ¶¶152-3 (emphasis added). It is not alleged that the CREC Defendants themselves falsely arrested E.; the Complaint instead alleges that the CREC Defendants set the arrest in motion by summoning the police, who, in turn, acted under color of state law in arresting E. There are no allegations that would show that conduct was performed pursuant to the CREC Defendants' responsibilities under state law. Instead, in these circumstances, the only plausible theory is that the CREC Defendants acted as private individuals. The concept of "probable cause" has nothing to do with these school administrators (although it is central to the possible liability of the Hartford Police Defendants, who are not involved in the present motion to dismiss).

*Id*. at 273.

Such an expansion of a private party's "state actor" § 1983 liability would run counter to Second Circuit authority, as articulated in *Dahlberg,* 748 F.2d at 92, where the Court of Appeals observed that

> several theories have evolved that when properly alleged suffice to tie a private person so closely to governmental actions that a court will hold the private actor's conduct subject to suit for violating another's constitutional rights. Thus, a private party may be held a state actor when the complained of conduct results from a state agent's encouragement or command, the state and private actor jointly participate in depriving plaintiff of his rights, the granting of benefits to a private actor by the state inseparably links them together, or the private actor undertakes to perform activities ordinarily exclusively engaged in by government.

Consistent with that restricted view of a private party's liability as a state actor for § 1983 purposes, in *Ginsberg* the Second Circuit cited and quoted *Dahlberg* for the proposition that "defendants' invocation of New York courts to issue a contempt order 'does not constitute joint participation so as to satisfy the statutory requirement under § 1983 that there be a state actor.'" 189 F.3d at 272. *Ginsberg* also cites with favor *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1352-53 (7th Cir. 1985), which the *Ginsberg* opinion describes as "granting summary judgment to restaurant owner on Section 1983 claim where owner reported non-paying customers to police officer, told officer where they went, and officer later arrested them for theft of services; but there was no evidence of 'concerted effort or plan' between the owner and the officer." 189 F.3d at 272-273.

Given these Second Circuit decisions, it is not surprising to find a considerable number of district court opinions in this Circuit which refuse to characterize as a state actor for § 1983 purposes

a private party who triggers a police arrest by communicating information to and requesting assistance or protection from the police. A typical expression appears in *Adebiyi v. City of New York*, No. 13-CV-480(WFK), 2014 WL 4922888, at *4 (E.D.N.Y. Sept. 30, 2014): "Case law in this Circuit is well-established that the provision of information to a police officer – even if that information is false or results in the officer taking affirmative action – is insufficient to constitute 'joint action' with state actors for purposes of § 1983." (quotation marks and citations omitted).

A more extended discussion is found in *D'Agostino v. New York State Liquor Authority,* 913 F. Supp. 757, 770 (W.D.N.Y. 1996):

> A private individual may be said to have acted "under color of state law," and thus may be held liable under § 1983, if he has conspired with state officials, that is, that he somehow reached an understanding with state officials, or was a willing participant in joint activity with the State or its agents. Absent evidence that such a conspiracy or joint activity took place, however, no § 1983 liability can attach to a private individual because the "under color of law" requirement is not satisfied. . . .
>
> Paul's activities here are analogous to those of a citizen who reports someone to the police. It is uniformly recognized, however, that a private party does not conspire or jointly act with a state actor simply by complaining to the police.
>
> Even providing false information to an arresting officer is not, by itself, sufficient to state a claim against a private party under § 1983. There must be some evidence of some *concerted effort* or *plan* between the private party and the state official.

(citations and internal quotation marks omitted). *See also Castro v. County of Nassau*, 739 F. Supp. 2d 153, 174 (E.D.N.Y. 2010) ("Although plaintiff asserts that defendants' cooperation with the police in the context of supplying the information makes them state actors, general allegations of cooperation between private individuals and specific state agents do not make out a claim of action

taken under color of state law. Moreover, the employees of an organization do not become state actors simply because they conducted an internal investigation of wrongdoing and told the police about the results of that investigation." (quotation marks and citations omitted)); *Johnson v. City of New York*, 669 F. Supp. 2d 444, 451 (S.D.N.Y. 2009) ("According to the complaint, the only alleged interactions between the NYU defendants and the state actors involved (1) Hughes' decision to notify NYPD 6th precinct, and (2) Deegan's false statement to police officer Wubnig that 'he saw plaintiff at an open locker with his wallet in plaintiff's hands.' Those allegations, even if proven, would be insufficient to state a claim because it is well established that merely furnishing information to the police does not by itself make someone a joint participant in state action under Section 1983." (quotation marks and citations omitted)); *Vazquez v. Combs*, No. 04-CV-4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) (Lynch, *D.J.*) ("[T]he core of plaintiff's allegations against Combs and Bad Boy, read in the light most favorable to him, is that they falsely reported him to the police for harassing Combs and stealing his Grammy, and asked that Vazquez be investigated or questioned about these alleged crimes. But merely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation." (citations omitted)); *Jones v. Maples/Trump*, No. 98 -CV-7132(SHS), 2002 WL 287752, at *5 (S.D.N.Y. Feb. 26, 2002) ("The only concrete factual allegation in the complaint related to the arrests concerning these individuals is that they supplied false information to the government. However, a private party's providing false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under § 1983." (quotation marks and citations omitted)), *aff'd sub nom. Jones v. Trump*, 71 F. App'x 873 (2d Cir. 2003).

These cases dismissed § 1983 claims against private parties whose communications to police officers triggered allegedly wrongful arrests. Some of the cases hold that no § 1983 liability attaches to a private party even though that party deliberately gave knowingly false information to the police, who then acted on it in arresting the plaintiff. Thus District Judge Lynch (as he then was) said in *Vazquez* that a private party's filing of a complaint or reporting a crime to the police does not state a claim under § 1983 "even if the complaint or report is deliberately false." 2004 WL 2404224, at *4.

A contrary view is suggested by a more recent case, *Biswas v. City of New York*, 973 F. Supp. 2d 504 (S.D.N.Y. 2013), where plaintiff, a student at a high school maintained by the New York City Department of Education ("DOE"), was arrested and suspended from school for allegedly sending threatening e-mails to two teachers at the school. That charge against the student was eventually dropped and another student confessed to sending the e-mails. Plaintiff asserted § 1983 false arrest claims against the arresting police officers, and also against private-party employees of the DOE, of whom Judge Koeltl said in his opinion: "it is undisputed that the DOE individuals summoned the police and caused the arrest by the latter." 973 F. Supp. 2d at 519. As to those private parties, plaintiff alleged that "the DOE defendants supplied false information to the police and caused the false arrest by the police, and are therefore liable for instigating the false arrest by the police." *Id.* at 518 (citations omitted). In aid of that theory, plaintiff alleged that "the DOE individuals provided fabricated, and thus transparently false, information to the police," and "the DOE individuals caused the police to arrest the plaintiff while knowing that the plaintiff was actually innocent." *Id.* at 519-520 (citations and footnote omitted). Denying a defense motion to dismiss those claims, Judge Koeltl cited New York state court decisions for the proposition that "a complainant can be held liable

for false arrest if the complainant intentionally provided false information to instigate an arrest by law-enforcement officials, or had no reasonable basis for the report," *id.* at 519 (quotation marks and citation omitted), and pointed to issues of fact as to whether the DOE employees "intentionally generated and supplied false information to the police and thus can be held liable for false arrest by the police, " *id.* at 520. Judge Koeltl's opinion lets that claim go forward in the form of a civil rights deprivation claim under § 1983. The opinion does not discuss the status of the DOE employees as "state actors." *Biswas* may accordingly be contrasted with *Vazquez*, where Judge Lynch held that private party communicators of "deliberately false" information to police were not state actors in connection with a subsequent police arrest. 2004 WL 2404224, at *4.

While it may seem strange, even unsettling, to observe two judges of the stature of Judge Lynch and Judge Koeltl reach arguably different conclusions, I need not dwell on it further, because the question does not arise in the case at bar. The complaint in this case contains no allegation or suggestion that McCain, Sullivan or Nolan, the CREC employees, knowingly supplied false information to the Hartford police, or knew that E. was in fact innocent at the time of the CREC Defendants' communications with the Hartford police. Therefore this Court has no occasion to consider whether such deplorable circumstances, if pleaded and proven, would constitute the CREC employees as state actors for § 1983 purposes.

The factual account set forth by the complaint is clear enough. According to Plaintiff, the three school administrators regarded the unsigned e-mail as threatening; they concluded that E. must have sent it; they conveyed that information to the HPD; and HPD officers then arrested E. Plaintiff contends that E. had nothing to do with the e-mail, and is strongly critical of the manner in which McCain, Sullivan and Nolan arrived at the erroneous conclusion that E. sent it.

Without making any findings on the points, I may accept for the purpose of this § 1983 analysis that the school administrators' identification of E. as the sender of the e-mail was wrong. I may further accept that in arriving at that erroneous conclusion, the administrator's conduct was negligent, even reckless, and the foreseeable result of the administrators' communication of their mistaken conclusion to the HPD was E.'s arrest.

That series of events, if proven, may or may not give Plaintiff viable claims against the CREC Defendants in a state court under the common law or Connecticut statutes. In this federal court, the threshold question is whether Plaintiff 's complaint states a federal claim. It does not. Plaintiff's complaint nowhere alleges or suggests that the CREC Defendants did not themselves *believe* (however mistakenly) that E. sent the e-mail when those individuals communicated with the HPD, or that they intended to involve the police in a joint effort to prosecute the innocent. The established rule, illustrated by the cited cases, is that the form and substance of communication between private parties and the police pleaded by this complaint does not suffice to make the private party a *state actor*. Because the CREC Defendants were not state actors, they have no liability under 42 U.S.C. § 1983 as a matter of law.[6]

---

[6] This Ruling notes in text a gap in the Complaint's factual account, between McCain's first telephoned 911 call to the police which did not identify a suspect, and police officers' subsequent boarding of the school bus, searching for E. by name. The question arises whether Plaintiff is in a position to allege additional facts in an amended complaint which would state a viable § 1983 claim against a CREC Defendant. In *McCarthy v. Roosevelt Union Free School District*, No. 15-CV-1468(JFB), 2017 WL 4155334, at *9 (E.D.N.Y. Sept. 19, 2017), the district court said that "the School Defendants were not present when McCarthy was arrested. When a defendant is a private actor and not an arresting officer, a plaintiff must show that the defendant instigated the arrest. Accordingly, 'a plaintiff must show that the defendant took an active role in the arrest ... such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff.' However, where, as here, private actors merely furnished information leading to an arrest, liability does not attach, and summary judgment is appropriate." (quoting *Vlach v. Staiano*, 604 F. App'x 77, 78 (2d Cir. 2015)) (internal

19

The only source of federal subject matter jurisdiction Plaintiff pleads against a CREC Defendant is 42 U.S.C. § 1983. The counts in question are Count I, false arrest as to McCain; Count II, false arrest as to Nolan; Count III, false arrest as to Sullivan; Count V, false arrest as to the CREC (*Monell* liability); Count VIII, excessive force as to the CREC (*Monell* liability); and Count XI, assault and battery as to the CREC (*Monell* liability). For the reasons stated, no individual CREC Defendant (McCain, Sullivan or Nolan) may be regarded as a state actor in the events of which Plaintiff complains. A civil rights claim under § 1983 fares no better when asserted against the CREC itself. It follows that these defendants have no federal liability. These federal claims will be dismissed without prejudice.[7]

Plaintiff's complaint also asserts claims against McCain, Sullivan and Nolan individually for

---

quotation marks and citation omitted). In *Vlach*, the Second Circuit, applying New York cases, said: "Liability may attach only when the defendant has affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." 604 F. App'x at 78 (quotation marks and citation omitted). One cannot presently tell whether the Plaintiff at bar could, consistent with her obligations under Fed. R. Civ. P. 11, allege facts in an amended complaint sufficient to bring this case within the theory of those cases. The present complaint does not do so.

[7] I will dismiss these claims without prejudice, and will grant leave to Plaintiff to file an amended complaint, if so advised. "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Ronzani v. Sanofi S.A.*, 899, F.2d 195, 198 (2d Cir. 1990) (quotation marks and citation omitted). However, "where a plaintiff is unable to allege any facts sufficient to support its claim, a complaint should be dismissed with prejudice." *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991); *see also Chapman v. New York State Div. for Youth*, 546 F.3d 230, 239 n.3 (2d Cir. 2008) (noting that where repleading "would be futile," the district court did not "exceed[]its allowable discretion in dismissing [certain] claims with prejudice, as opposed to allowing [Plaintiff] to amend their complaint"). Here, as noted *supra*, an amended complaint may allege facts that state a plausible federal claim against these defendants; accordingly, dismissal of these claims without prejudice is appropriate.

negligent infliction of emotional distress, Counts XIII, XIV and XV; intentional infliction of emotional distress, Counts XVI, XVII and XVIII; and negligence, Counts XIX, XX and XXI. These are state common law claims. To bring them before this federal court, plaintiff invokes supplemental jurisdiction, as provided for in 28 U.S.C. § 1367.

Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Section 1367(c) provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." The exercise of pendent or supplemental jurisdiction is traditionally "a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) (footnote omitted). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Kolari v. New York - Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citing and quoting *Carnegie - Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari*, 455 F.3d at 122 (quoting *Cohill*, 484 U.S. at 350 n.7). The Second Circuit in *Kolari* also quoted this language from the Supreme Court's decision in *Gibbs*: "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. If the federal law

claims are dismissed before trial the state claims should be dismissed as well." *Kolari*, 455 F.3d at

122 (quoting *Gibbs*, 383 U.S. at 726) (ellipses omitted). *Kolari* reversed as an abuse of discretion

the district court's exercise of supplemental jurisdiction under § 1367. Judge Feinberg's opinion

reasoned:

> Plaintiffs' federal-law claims were eliminated on a motion to dismiss,
> prior to the investment of significant judicial resources, and we can
> discern no extraordinary inconvenience or inequity occasioned by
> permitting the claims to be refiled in state court where they will be
> afforded a "surer-footed reading of applicable law."

455 F.3d at 123 (quoting *Gibbs*) (footnote omitted).

District courts achieve these salutary objectives in appropriate cases by dismissing federal-

law claims on the merits and with prejudice, declining to exercise supplemental jurisdiction over

state law claims, and dismissing those claims without prejudice. That procedure is consistent with

the Second Circuit's closing observation in *Dahlberg v. Becker*, 748 F.2d 85 at 93, which affirmed

the district court's dismissal of a § 1983 claim:

> In concluding that plaintiff failed to state a cause of action under 42
> U.S.C. § 1983 because there was no demonstration either of state
> action or a state actor, we do not mean to suggest that plaintiff is
> without a remedy. The incidents alleged may well support a tort
> action in state court. We simply conclude that the events recounted
> here do not provide a basis for a federal claim.

That is precisely the situation presented by the case at bar with respect to Plaintiff's claims against

the CREC Defendants. The Court concludes that the events recounted about E.'s arrest do not

provide a basis for a federal civil rights claim against those defendants, but Plaintiff may have a

remedy against them in the form of a tort action in a Connecticut court.[8]

_____

[8] Connecticut law would govern a tort action that Plaintiff might file against the CREC
Defendants in a Connecticut court. Plaintiff alleges in her present complaint at ¶125 that

The effect of a district court declining to exercise supplemental jurisdiction over a state law claim is to leave the court without subject matter jurisdiction over that claim. It would accordingly be inappropriate for the court to say anything about the merits of the claim: consequently, there is a dismissal "without prejudice " which leaves the Plaintiff if so inclined to pursue the claim in a state court. The cited cases follow that pattern. *Adebiyi v. City of New York,* 2014 WL 4922888 at *8, is typical: in a false arrest case, the court dismissed the § 1983 federal claims against the private party school employees because they were not state actors, declined to exercise supplemental jurisdiction over the state law claims, and concluded: "Plaintiff's state law claims are therefore dismissed without prejudice."

That is the course mandated by appellate authority. In *Cohill*, 484 U.S. 343 at 350, the Supreme Court said: "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and

_____

"Defendant McCain called the police on E. without probable cause that E. was involved in sending or writing of the 'Reckoning' email." While the question is not presently before this court for decision, Plaintiff's reference to "probable cause" in the context of a private party's participation in an allegedly wrongful arrest may miss the mark. In *Biswas*, 973 F. Supp. 2d at 514, Judge Koeltl said that "Section 1983 claims for false arrest are based on the tort of false arrest under state law, " and applied New York law to a § 1983 claim where the arrest occurred in New York. During the course of his analysis of New York law, Judge Koeltl observed that "for arrests by law enforcement officers, the existence of probable cause to arrest constitutes a complete defense to an action for false arrest, whether that action is brought under Section 1983 or state law. . . . However, a private citizen who makes an arrest does so at his peril; if the person arrested did not in fact commit the crime for which he is arrested, the person who arrests him is liable even if he acts in good faith or has probable cause to make an arrest." 973 F. Supp. 2d at 515 (quotation marks and citations omitted) (applying New York law). That discussion demonstrates that the element of "probable cause" may have different applications to police officers and private citizens in a false arrest case. There are, of course, differences between *Biswas* and the case at bar: the CREC Defendants did not perform a citizen's arrest, they communicated information to police officers who arrested E. in Connecticut, and Connecticut would govern a state court tort action by Plaintiff against any or all of the CREC Defendants.

only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (citation and footnotes omitted). The Second Circuit adheres to that rule. *See, e.g., Bhattacharya v. SUNY Rockland Community College,* No. 17-cv-1048, 2017 WL 4511397, at *2 (2d Cir. Oct. 10, 2017) ("When a district court declines to exercise supplemental jurisdiction in a case removed from State court, it has discretion either to dismiss the claims without prejudice or to remand the claims." (citing *Cohill*, 484 U.S. at 357)); *Rizvi v. Town of Wawarsing*, 654 F. App'x. 37, 40 (2d Cir. 2016) ("[W]e see no unfairness in declining to exercise supplemental jurisdiction in this case. We therefore do not reach the merits of Rizvi's preemption claim. Instead, we vacate the judgment of the district court and remand with instructions to dismiss that claim without prejudice to Rivzi's re-filing in an appropriate forum."); *Haynes v. Zaporowski*, 521 F. App'x. 24, 28 (2d Cir. 2013) ("We conclude that, as all federal claims were dismissed for failure to state a claim, the court should have declined to entertain supplemental jurisdiction over Haynes's state-law claims, and the judgment should have dismissed the latter claims without prejudice. . . . [W]e remand for entry of an amended judgment stating that the state-law claims are dismissed without prejudice.").

That is the course this Court will follow in deciding the motion of the CREC Defendants to dismiss the claims against them in Plaintiff's Complaint. The federal law claims Plaintiff asserts against the CREC Defendants, based on 42 U.S.C. § 1983, will be dismissed for failure to state a claim upon which relief can be granted. As for the state law claims Plaintiff asserts against those Defendants, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367. Plaintiff's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

### IV.  CONCLUSION AND ORDER

For the foregoing reasons, the motion of Defendants Capitol Region Education Council, Robert McCain, Timothy Sullivan, and Christopher Nolan [Doc. 24] to dismiss certain counts in Plaintiff's complaint is GRANTED, in the manner and form specified in the following Order.

1.  Counts I, II, III, V, and VIII and XI are DISMISSED WITHOUT PREJUDICE, with LEAVE TO AMEND those Counts, if so advised.  An amended complaint must be filed not later than **June 15, 2018**.

2.  Counts XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX and XXI are DISMISSED WITHOUT PREJUDICE.  These state law claims may be reinstated if the Plaintiff files an amended complaint which alleges a viable federal claim.

It is SO ORDERED.

Dated:  New Haven, Connecticut
         May 7, 2018


                                        _/s/ Charles S. Haight, Jr._____
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge