# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| THAIS ORTOLAZA *ex rel* E., A MINOR CHILD,<br><br>    Plaintiff,<br> v.<br><br>CITY OF HARTFORD, CAPITOL REGION EDUCATION COUNCIL, ROBERT McCAIN, TIMOTHY SULLIVAN, CHRISTOPHER NOLAN, BRIAN GUSTIS, EZEKIAL DONNELLY, MARC DaCRUZ, CARLOS TORRES, JOSEPH BUYAK, IAN POWELL, NICHOLAS TRIGILA, and BENJAMIN LEE,<br><br>    Defendants. | Civil Action No.<br>3:17-CV-01885 (CSH)<br><br><br><br>DECEMBER 18, 2019 |

## RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION [Doc. 86]

**HAIGHT, Senior District Judge:**

Plaintiff Thais Ortolaza ex rel E., a minor child, has moved for the Court to reconsider and vacate its Ruling filed May 24, 2019, 388 F. Supp. 3d 109 (D. Conn. 2019) ("the May 2019 Ruling"). The May 2019 Ruling dismissed Plaintiff's Amended Complaint against the CREC Defendants. Plaintiff couples the present motion for reconsideration of that Ruling with a stated intention to file a second amended complaint. The CREC Defendants oppose Plaintiff's Motion for Reconsideration.

## I. BACKGROUND

The May 2019 Ruling, the subject of the present motion for reconsideration, was preceded

1

by an opinion dismissing the original Complaint and granting Plaintiff leave to file the Amended Complaint. That earlier opinion is reported at 2018 WL 2100280 (D. Conn May 7, 2018) (the "May 2018 Ruling"). For purposes of this Ruling on Plaintiff's motion for reconsideration, familiarity with these two prior opinions is assumed. The prior opinions recite in detail the facts and circumstances of the case, a recitation repeated in this Ruling only to the extent necessary to explain the Court's resolution of Plaintiff's motion for reconsideration.

The incident in suit occurred during the morning of November 19, 2015, when E., a student at a CREC school, was arrested by Hartford police and briefly detained before being released without charges against him. The police acted in response to communications from school administrators who early that morning had received and considered an anonymous threatening e-mail. Plaintiff's initial complaint asserted claims arising out of E.'s arrest and detention against the school administrators ("the CREC Defendants") and Hartford police officers ("the Hartford Defendants").

The central fact at issue in Plaintiff's § 1983 action against the CREC-Defendant school administrators is the manner in which E. came to be identified to the Hartford police as the suspected author of the threatening e-mail. The gravamen of Plaintiff's federal claims against the CREC Defendants is that those Defendants should be regarded as joint "state actors" with the police with respect to the arrest and detention of E. In the May 2018 Ruling, the Court dismissed Plaintiff's original Complaint against the CREC Defendants because Plaintiff failed to make that showing as a matter of law. Plaintiff was granted leave to file an Amended Complaint in an effort to state a viable federal claim against the CREC Defendants. Plaintiff filed an Amended Complaint attempting to do so. The May 2019 Ruling dismissed the Amended Complaint on the same ground: Plaintiff's failure to sufficiently allege that the CREC Defendants were "state actors" for § 1983

2

purposes.

## II. DISCUSSION

Plaintiff seeks reconsideration of the May 2019 Ruling on the basis of "newly discovered evidence." The CREC Defendants seek to preserve the May 2019 Ruling. Their initial contention is that the evidence Plaintiff relies upon is not "newly discovered," and consequently cannot support a motion for reconsideration.

This threshold dispute necessitates the fashioning of a procedural chronology. The following dates are pertinent:

| | |
|---|---|
| Date of incident: | November 19, 2015 |
| Original Complaint filed against CREC and Hartford Defendants : | November 9, 2017 |
| Ruling dismissing original Complaint against CREC Defendants filed, with leave to replead: | May 7, 2018 |
| Amended Complaint filed: | June 15, 2018 |
| Motion by CREC Defendants to dismiss Amended Complaint: | August 13, 2018 |
| Briefing completed on CREC motion to dismiss Amended Complaint: | October 4, 2018 |
| Ruling dismissing Amended Complaint against CREC Defendants: | May 23, 2019 |
| Motion for reconsideration of that Ruling: | June 5, 2019 |
| Stipulation dismissing Plaintiff's action against Hartford Defendants: | July 25, 2019 |

As this litigation progressed, the parties to the action also conducted discovery. Although the CREC Defendants moved to dismiss the Amended Complaint against them on August 13, 2018,

3

there was no application to stay discovery during the pendency of that motion. The Hartford Defendants, who had never moved to dismiss the action against them, continued their participation in the case, including pre-trial discovery, until the July 25, 2018 stipulation of dismissal as to them. It is necessary to consider the accomplished discovery in detail because Plaintiff contends the fruits of that discovery constitute "newly discovered evidence" requiring reconsideration and vacatur of the May 2019 Ruling dismissing the Amended Complaint against the CREC Defendants.

The discovery in question consists of six depositions and the interrogatory responses of two individuals. All the depositions were conducted by Plaintiff's counsel, who also propounded the interrogatories. The details are as follows:

| | |
|---|---|
| February 4, 2019: | deposition of Nicholas Triglia, a Hartford police Defendant. |
| February 5, 2019: | deposition of Brian Gustis, a Hartford police Defendant. |
| February 8, 2019: | interrogatory responses of Robert McCain and Tim Sullivan, CREC Defendants. |
| February 22, 2019: | deposition of Christopher Nolan, a CREC Defendant. |
| February 26, 2019: | deposition of Robert McCain. |
| May 13, 2019: | deposition of Tim Sullivan. |
| May 22, 2019: | deposition of Joseph Buyak, a Hartford police Defendant. |

Plaintiff contends that "the deposition testimony in question was unavailable, thus it is timely and is in fact newly-discovered." Reply Br. [Doc. 94] at 4. Particular stress is laid upon the deposition of Hartford Police Deputy Chief Buyak, the senior officer on site during the arrest, whose testimony Plaintiff says is "able to put all of the other evidence into context, and provide a credible backdrop on how to interpret the other testimony from CREC Defendants." *Id*. at 3. The result, Plaintiff contends, is that "the newly discovered evidence requires Plaintiff to alter and amend her

4

pleading substantially to conform with the newly-discovered facts about the conduct of CREC Defendants [on] November 19, 2015." *Id*. at 4.

On the issue of timing, a significant element in the evaluation of whether particular evidence is "newly discovered," Plaintiff's Reply Brief makes the point that the sort of scheduling delays not uncommon in litigation occurred in this case. It is said that Plaintiff "first noticed the Buyak deposition September 27, 2018, and did not finally get a concrete date until May 22, 2019, which marked the fifth notice of deposition for Buyak." *Id.* at 3. The same circumstances surround the deposition of Sullivan, which Plaintiff also regards as important, and "required four notices." *Id.* "Plaintiff first issued notice for Defendant Sullivan January 4, 2019, yet scheduling circumstances delayed it until the May 13, 2019 deposition date." *Id.*

Plaintiff seeks reconsideration on the basis that "[n]ew testimony shows Defendant Nolan called Defendant Buyak before any police officer ever stepped foot on CREC property and volunteered E.'s identity." Pl.'s Br. on Mot. for Recons. [Doc. 86-1] (hereinafter "Brief"), at 2. Buyak is identified as "the Deputy Chief of Police of Hartford." *Id*. Counsel for Plaintiff took the deposition of Buyak at counsel's office in Hartford on May 22, 2019. Transcript [Doc. 87-1], at 1. According to the Brief at 2, Buyak "testified that Defendant Nolan identified E. as the writer of the e-mail," which leads Plaintiff to conclude: "Thus Plaintiff is able to allege CREC Defendants acted jointly with the police, and instigated the arrest." Brief at 3. Plaintiff moves for reconsideration "so she may amend her complaint [a second time] to update the allegations to show precisely what she has learned, which now nudges her complaint into the realm of private actor liability under 42 U.S.C. § 1983." Brief at 17.

The standard for granting a motion for reconsideration is "strict," and reconsideration will "generally be denied unless the moving party can point to controlling decisions or data that the court

overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)). This exacting standard is codified in the District of Connecticut Local Rules of Civil Procedure, which dictates that motions for reconsideration "shall satisfy the strict standard applicable to such motions" and "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. Civ. R. 7(c).

The Second Circuit has identified three major grounds that may justify reconsideration: "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation marks and citation omitted); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (same).

In the case at bar, Plaintiff relies upon the second of these three grounds: "the availability of new evidence." Plaintiff professes to find, in police officer Buyak's deposition, newly discovered evidence which requires that this Court vacate its order dismissing the Amended Complaint against the CREC Defendants. New evidence as a ground for reconsideration was considered by Judge Hall in *Marshall v. City of Meriden*, No. 3:11-cv-577, 2017 WL 5513202 (D. Conn. March 13, 2017):

> When arguing for reconsideration based on new evidence, the moving party must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered. This is because, for the purpose of a motion to reconsider, evidence cannot be considered new evidence unless it was truly newly discovered or could not have been found by due diligence. Thus, where a plaintiff moving for reconsideration has failed to provide a convincing explanation as to why he could not have obtained the pertinent evidence in a timely manner, the court is not obligated to consider his untimely submission, but rather, may deny

6

the motion for reconsideration.

2017 WL 5513202, at *3 (citations and internal quotation marks omitted).

The requirement that evidence, to be considered as a basis for changing a judgment, must be *newly* discovered finds frequent expression in the cases. The question arises on motions for reconsideration under a local rule or for relief from a judgment under the Federal Rules. "A motion to alter or amend a judgment pursuant to Rule 59 is evaluated under the same standard as a motion for reconsideration under Local Civil Rule 6.3." *Banco Central del Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 Civ. 9649, 2007 WL2493684 (S.D.N.Y. Sept. 5, 2007), at *2. Judge Keenan said in that case:

> In order to establish entitlement to reconsideration of a decision in light of the availability of new evidence, Principal Defendants must show that: (1) newly discovered evidence is of facts existing at the time of the prior decision; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) the newly discovered evidence is not merely cumulative of evidence already offered. A party seeking to alter or amend a judgment on the basis of newly discovered evidence bears an onerous burden.

*Id.* (citations and internal quotation marks omitted).

In *Langsford v. Yale Univ. School of Med.*, 202 F.R.D. 367, 370 (D. Conn. 2001), District Judge Droney (as he then was), denying a motion for relief from a summary judgment on the ground of newly discovered evidence, recited the same elements as those articulated in *Banco Central*, and held on the facts of the *Langsford* case: "Assuming that the new evidence in this case is admissible and non-cumulative, the Court nevertheless concludes that the plaintiff was not excusably ignorant of the evidence. Nor did she use due diligence to learn of the evidence."

These well-established principles pose obvious difficulties for Plaintiff's attack upon the

May 2019 Ruling on the ground of newly discovered evidence. The most important "newly discovered" evidence is Buyak's deposition, taken in May 2019. Buyak's testimony, Plaintiff now contends, causes her to revise her account of the communications between the school administrators and Hartford police resulting in E.'s arrest. According to Plaintiff's Brief at 1, previously Plaintiff had "relied on the December 2017 letter from CREC counsel for some of her allegations, because she had no other facts or allegations to understand the genesis of CFREC's actions on the day of the incident." Plaintiff asserts: "New testimony shows Defendant Nolan called Defendant Buyak before any police officer ever stepped foot on CREC property and volunteered E.'s identity." Brief at 2. That "new testimony" is Buyak's deposition. Plaintiff's argues that in fashioning her Amended Complaint: "Plaintiff pled McCain only provided the information from a prompt, based on CREC's December 2017 letter. Testimony now shows CREC Defendants told HPD of E. without being asked. Thus Plaintiff is able to allege CREC Defendants acted jointly with the police, and instigated the arrest." *Id.* at 3.

Plaintiff's Brief at 2 also contains this assertion: "In discovery – *none of which was available to Plaintiff prior to her filing the Amended Complaint* – Plaintiff obtained testimony refuting that McCain only identified the child to the police when they were in the room, pressuring him." (emphasis added). The "discovery" referred to centers around the Buyak deposition. This action was commenced on November 9, 2017. One cannot discern a basis for saying that a discovery deposition of Buyak, a Hartford police Defendant, was not "available" to Plaintiff until the Amended Complaint was filed on June 15, 2018. More to the point, Buyak continued to be available to be deposed from that date until May 22, 2019, when his deposition was taken. The CREC Defendants' motions to dismiss Plaintiff's pleadings have nothing to do with the scheduling or accomplishment of Buyak's deposition: Buyak was a Hartford Defendant, and the Hartford

8

Defendants were fully engaged in the litigation until the stipulation dismissing them from the case on July 25, 2019.

Plaintiff asserts that her counsel "first noticed the Buyak deposition September 27, 2018 and did not finally get a concrete date until May 22, 2019." Reply at 3. One supposes that counsel for the parties were engaged in the customary exchange of courtesies about scheduling. There is no indication in the record that counsel for Plaintiff objected to or sought the Court's intervention about a delay in deposing Buyak.

The fact of the matter is that Buyak, a Hartford police Defendant and the head of the unit that arrested E., was in any meaningful sense of the word "available" under the discovery rules to be deposed by Plaintiff as soon as issue was joined on the pleadings.

Moreover, Plaintiff as the proponent of purportedly "newly discovered" evidence has the burden of showing that her exercise of "due diligence" failed to discover it. The difficulty for Plaintiff on that aspect of the case derives from the obvious fact that the content of relevant communications between the CREC school administrators and the Hartford police are of crucial importance in this § 1983 case.

Plaintiff did not participate in the conversation between Buyak and Nolan, and thus had no knowledge of its content, but the most obvious and elemental exercise of due diligence should have impelled Plaintiff to acquire that knowledge as quickly as possible. After all, Plaintiff's § 1983 claim against the CREC Defendants turned on whether "the form and substance of communication between private parties and the police" suffices "to make the private party a *state actor*," (*see* May 7 Ruling, 2018 WL 2100280 at *10), and what CREC Defendants and police officers said to each other during their initial exchanges are of crucial and obvious importance. Plaintiff filed her original Complaint on November 9, 2017. Plaintiff did not acquire the evidence now relied upon as the basis

9

for reconsideration until Buyak was deposed on May 22, 2019. That chronology cannot be characterized as the exercise of due diligence in the pursuit of evidence of this significance.[1]

As noted *supra*, there is no support in the record for Plaintiff's conclusory assertion that Buyak (a named Defendant in the action for whom counsel had appeared) was not "available" for a discovery deposition at any time after Plaintiff filed her original Complaint on November 9, 2017. The importance of police testimony on this aspect of the case was apparent at that early time. Plaintiff's counsel did not get around to deposing Buyak until May 22, 2019, and so far as the present record reveals, counsel acquiesced in repeated re-schedulings of that deposition after first noticing it for September 2018. "Due diligence" on the part of Plaintiff to obtain this evidence cannot be made of stuff such as this.

The manifest inability of Plaintiff to qualify Buyak's deposition testimony as "newly discovered evidence" mandates denial of her present motion for reconsideration. But I do not reject the motion for that reason alone. The Court's consideration of the substance of Buyak's testimony, together with Plaintiff's revised contentions related to it, would not alter the Court's May 2019 Ruling that Plaintiff's Amended Complaint fails to allege a viable § 1983 claim against the CREC Defendants.

---

[1] In contending that the Buyak deposition cannot be regarded as "newly discovered evidence," Defendants rely on *Torcasio v. New Canaan Bd. of Ed.*, No. 3:15-cv-53, 2016 WL 1275028 (D. Conn. April 1, 2016), where Magistrate Judge Merriam, denying a motion to reconsider a discovery order, said the Court was "hard-pressed to find that testimony offered at a December 17, 2015 deposition, at which plaintiff's counsel was in attendance, . . . constitutes 'new evidence' in regard to a ruling issued on January 25, 2016." 2016 WL 1275028, at *2. Judge Merriam observed that "[i]f plaintiff's counsel felt that the December 17, 2015 deposition testimony was relevant to the arguments raised in the motion to compel, counsel should have alerted the Court to that fact while the motion was pending." *Id*. That particular criticism is less justified in the case at bar, where Buyak was deposed on May 22, 2019 and the Court's opinion was signed, fortuitously, on May 23. However, that juxtaposition of dates does not alter the lack of due diligence exhibited by Plaintiff in developing the evidence now proffered as "newly discovered."

The Court's May 2019 Ruling quoted or paraphrased the allegations of the Amended Complaint as follows (388 F. Supp. 3d at 112): McCain, Nolan and Sullivan, the three CREC Defendants, discussed the threatening e-mail during the early morning of November 19, 2015. "McCain called 911 at 6:21 a.m. and informed the HPD 911 dispatcher of the e-mail and that McCain believed the threat it contained was credible. This was the CREC Defendants' initial notification to the HPD about the incident." "McCain, Nolan and Sullivan determined that E. was a suspect in the sending" of the email and E's "authorship of the email was likely." E. boarded the school bus at about 6:57 that morning . "By this time, it appears that the CREC Defendants had identified E. to the HPD as the suspected author of the email, but they had made no effort to prevent E. From boarding the bus at that time." "McCain, Sullivan and Nolan told the Hartford Police Department that E. would be on the bus," and directed the bus to go to a different school close to the HPD, where a group of police, commanded by Buyak, arrested, handcuffed and removed E.

The deposition of Buyak, upon which Plaintiff bases her motion for reconsideration, establishes that he was on duty at the HPD headquarters on the morning of November 19, 2015, and contains this testimony:

Q. Did you go to a school that day?

A. I did.

Q. What school did you go to?

A. I don't know the name of it, but it was at 15 Van Dyke. It was a CREC property.

Q. Do you recall what the issue was?

A. I was contacted by a CREC representative who indicated that a threat had been received by email from a student.

Q. Who was the CREC representative that contacted you?

A. Chris Nolan.

* * * * * *

Q. So what did Mr. Nolan say when he called you?

A. He explained that a threat had been received in an email form, and he conveyed that they had a good idea who was responsible for doing it, for making that threat.

Q. Did he tell you who the student was?

A. Yes. He did.

Q. And was that the first phone call that you had with him that morning?

A. As I recall, yes.

Transcript at 33–35.

Plaintiff undertakes to explain in her Brief why this testimony by Buyak requires the reconsideration and setting aside of the Court's May 2019 Ruling dismissing the Amended Complaint. Plaintiff's Brief argues that point in this manner:

In framing her Amended Complaint, Plaintiff "relied on the December 2017 from CREC counsel for some of her allegations, because she had no other facts or allegations to understand the genesis of CREC's actions on the day of the incident." Brief at 1. The May 23 Ruling gave consideration to, as party admissions by, certain statements in a December 2017 letter from McCain's counsel to Plaintiff's counsel. *See* 380 F. Supp. 3d at 113–114. Plaintiff, seeking reconsideration, now argues: "New testimony shows Defendant Nolan called Defendant Buyak before any police officer ever stepped foot on CREC property and volunteered E's identity." Brief at 2. "Defendant Buyak said it was Defendant Nolan who identified E. to the police." *Id.* at 6. "The person from CREC who identified E. to the police matters." *Id.* Expanding on that assertion, Plaintiff contends:

> Furthermore, with Nolan having called Buyak, it takes the entire effort to contact police out of the hands of McCain as a simple private citizen, and the effort to contact police becomes institutional by CREC to communicate E.'s name to police, with CREC's intention that the child be detained on false information—namely, that McCain never had any conversations with E. about E. having firearms or belonging to a gang.

*Id.* at 12.

The substance of Buyak's deposition testimony does not support the conclusion Plaintiff seeks to draw from it. Buyak described the events leading up to E.'s arrest in a manner that alters, in one limited respect, the account recited by the Court in the May 2019 Ruling, based on the then-existing record. At one point in that Ruling, the Court said: "McCain took the manifestly sensible step of telephoning the Hartford police and informing them about the threatening e-mail, thereafter responding to police inquiries by giving them information about E." 388 F. Supp. 3d at 124. Buyak says in his testimony that it was Nolan, not McCain, who made the seemingly first call to the Hartford police about the school administrators' concerns about the email, and Nolan informed Buyak of the identity of the individual student the CREC Defendants suspected was the perpetrator.

Accepting *arguendo* that Buyak's account of those particular events was more accurate than the account recited in the May 2019 Ruling, the resulting alteration in the narrative does not alter the Court's conclusion that the Amended Complaint failed to allege a viable § 1983 claim against the CREC Defendants.

The May 2019 Ruling identifies the principle of law that governs this case: "The conduct of McCain and the other CREC Defendants would cast them in the role of 'state actors' in E's arrest if they were acting 'under color of' state law, as that phrase is used in (and required by) § 1983." 388 F. Supp. 3d at 116. I observed in the Ruling that § 1983 civil rights cases frequently "involve claims by individuals who were arrested as the result of communications between private parties and

the police." *Id*. at 118. The Supreme Court has said that "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may fairly be treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2002) (internal quotation marks omitted). The Second Circuit applies certain pragmatic tests of conduct to determine whether "the actions of a nominally private entity are attributable to the state." *Sybalski v. Indep. Grp. Home Living Program*, 546 F.3d 255, 257 (2d Cir. 2008). In arrest cases such as the one at bar, *King v. Crossland Savings Bank*, 111 F.3d 251 (2d Cir. 1997), states the Second Circuit rule:

> "To hold a defendant liable as one who affirmatively instigated or procured an arrest, a plaintiff must show that the defendant or its employees *did more than merely provide information to the police. The mere identification of a potential culprit* does not give rise to liability. . . . [T]he mere furnishing of information to the police will not subject the informant to liability in an action for false arrest *when an arrest of an innocent accused* results from such information. Further, if a defendant *erroneously reports a suspected crime,* but in no other way instigates the arrest, he is not liable for false imprisonment." 111 F.3d at 257 (emphases added) (internal citations omitted).

After reviewing these and other arrest cases, I concluded in the May 2019 Ruling:

> The cited cases hold uniformly that a private individual's calling the police and giving them information – even if the information is later shown to be incorrect – does not establish joint action between the police and the private caller for the purpose of § 1983 liability. Nor does such conduct, standing alone, constitute private "instigation" of an arrest carried out by police of a nature exposing the private individual to a § 1983 claim.

388 F.3d at 124.

Applying those principles to the instant case, I held in the May 2019 Ruling that the CREC Defendants "cannot be regarded as state actors, or as having acted under color of state law, in connection with the arrest of Plaintiff's son E. by the Hartford police." 388 F. Supp. 3d at 134. The police were the state actors in the case. Their arrest of E. "resulted from information communicated

14

to the police by the school administrators," *id.*, for which th CREC Defendants bear no § 1983 liability as a matter of law. The school administrators have that freedom from liability, whether the first school communication to the police came from McCain (as Plaintiff alleged in the Amended Complaint) or from Nolan (as Plaintiff now asserts on this motion, based on Buyak's deposition). The evidence Plaintiff cites as ground for reconsideration, newly discovered or not, has no effect upon the May 2019 Ruling.[2]

---

[2] Plaintiff contends in her Reply Brief at 10 that Buyak's deposition, coupled with other "newly discovered evidence," supports the conclusions that "CREC Defendants had no reasonable basis for the report of E. to the police, and that McCain knew his statement that E. had access to guns was false, and thus Plaintiff can plead McCain knowingly provided false information to the police." Plaintiffs derive these conclusions from conclusory interpretations of shreds of evidence that do not plausibly compel the conclusions. In any event, Plaintiff's conclusions make no difference to the § 1983 analysis. In *Vazquez v. Combs*, No. 04 Civ. 4189, 2004 WL 2404224 (S.D.N.Y. Oct. 22, 2004), District Judge Lynch (as he then was) considered a § 1983 claim against an entertainer and his company alleging that "they falsely reported [plaintiff] to the police for harassing Combs and stealing his Grammy, and asked that Vazquez be investigated or questioned about these alleged crimes." 2004 WL 2404224, at *4. Judge Lynch, dismissing the complaint, said of those allegations: "But merely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, *even if the complaint or report is deliberately false*, does not give rise to a claim against the complainant for a civil rights violation." *Id*. (citations omitted, emphasis supplied). The same rule obtains in the case at bar: Even if Plaintiff adequately pleaded that the CREC Defendants deliberately gave police a falsified account of E.'s experiences or background, that conduct would not give rise to a civil rights claim under § 1983 against those Defendants. Accordingly the Plaintiff's federal claim against them is dismissed with prejudice. The state and common law claims are dismissed without prejudice to assertion in a state court.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration [Doc. 86] is DENIED.

It is **SO ORDERED**.

Dated:   New Haven, Connecticut
         December 18, 2019

                                        */s/ Charles S. Haight, Jr.*
                                        _____
                                        CHARLES S. HAIGHT,  JR.
                                        Senior United States District Judge